## CLAYTON OIL & REFINING CO. v. LANGFORD. (No. 2683.) *

(Court of Civil Appeals of Texas. Amarillo. May 19, 1926. Rehearing Denied June 30, 1926.)

**1. Sales ⬤══89.**

Contract to take all oil produced under certain maximum amount at certain price, with provision for 30-day notice to terminate, is not such unperformed contract as might be modified without additional consideration.

**2. Contracts ⬤══237(1).**

Where contract provides for sum stated, or to be ascertained in manner fixed, as payment for particular thing, subsequent agreement reducing compensation is without consideration, unless other party is compensated.

**3. Sales ⬤══89.**

Agreement of seller of oil to accept reduced price for 30 days, provided contract price be continued thereafter, *held* supported by sufficient consideration.

⬤══For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error granted November 10, 1926.

**4. Sales** ⚖══89—**Where seller offered to reduce price of oil for period, on condition of return to contract price thereafter, but buyer terminated contract shortly after time for reinstatement of contract price, held, that minds of parties never met.**

Where contract provided for sale of oil at certain price, with provision for 30-day notice of termination, and seller agreed to reduction of price for 30 days in consideration of promise to continue contract price thereafter, but buyer terminated contract shortly afterwards, *held* that, if buyer acted in good faith, minds of parties never met on conditions of modified agreement, and therefore original contract was still in force.

**5. Sales** ⚖══89—**Where seller offered to reduce price of oil for period, in consideration of continuation of contract price thereafter, but buyer terminated contract, paying only reduced price after period when contract price was to have been reinstated, subsequent offer of contract price held too late, as acceptance of offer to modify contract.**

Where seller of oil agreed to accept less than contract price for 30 days, in consideration of promise to continue contract price thereafter, but buyer terminated contract shortly after reinstated contract price was to have been effective, and only paid reduced price until termination, subsequent offer to pay contract price from date at which it was to have been reinstated, until termination, *held* too late, as acceptance of seller's offer to modify.

**6. Sales** ⚖══36—**Where oil was delivered by mistake, and upon discovery like quantity and quality was tendered back, or market price at time of discovery, which offer was refused, buyer was liable for market price as of time of discovery, and not at time of delivery.**

Where contract for sale of oil was terminated, and thereafter oil was delivered to buyer under contract by pipe line company, without fault of buyer or seller, and on discovery thereof buyer tendered like quantity and quality of oil, or market value thereof, which offer was refused, *held*, that buyer was liable for market price only at time of discovery, and not at time of delivery.

Error from District Court, Wichita County; Guy Rogers, Judge.

Suit by W. S. Langford against the Clayton Oil & Refining Company. To review a judgment for plaintiff for part of sum claimed, defendant brings error, and plaintiff cross-assigns error. Affirmed.

Phillips, Townsend & Phillips and Tom Scurry, all of Dallas, for plaintiff in error.

Fitzgerald & Hatchitt, of Wichita Falls, and Doty & Watkins, of Fort Worth, for defendant in error.

JACKSON, J. This suit was instituted by W. S. Langford, herein styled appellee, in the district court of Wichita county, Tex., to recover from the Clayton Oil & Refining Company, herein designated appellant, for the sale and delivery by appellee of all his oil from certain premises to appellant. Appellee alleges:

That on February 7, 1924, he entered into a written contract with appellant, by the terms of which he agreed to sell, and appellant agreed to buy, all of his oil produced on certain premises, which he describes in his petition, at the posted price of the Texas Pipe Line Company, plus a premium of 25 cents per barrel; that in compliance with the contract he delivered all of his oil from said premises to appellant from February 7, 1924, to April 29th thereafter; that the posted price per barrel of the Texas Company during that period was $2.25, which, with the premium agreed to be paid of 25 cents per barrel, bound and obligated appellant to pay him $2.50 per barrel for each barrel run and delivered under the contract; that on and after March 15, 1924, appellant refused to pay him 15 cents per barrel on 5,693.28 barrels of oil delivered and received from that date to April 29th thereafter, and that said 15 cents per barrel for said period of time aggregates the sum of $854.01, for which amount he sues, with interest at the rate of 6 per cent. per annum from and after April 29, 1924.

That, notwithstanding appellant's contract was by it terminated, effective April 29, 1924, it caused the Texas Pipe Line Company, then serving his lease, to run to appellant on April 30, 1924, 178.80 barrels of appellee's oil, for which it has failed and refused to pay at the posted market price of $2.25 per barrel, which is an additional amount of $402.33, for which he sues, with interest at the rate of 6 per cent. per annum from and after April 30, 1924.

Appellee properly pleads the effect of the written contract, a copy of which he attaches to his petition, the provisions of which, necessary to a disposition of this case, after naming appellee as party of the first part, and appellant as party of the second part, read:

"(1) The party of the first part has this day contracted and sold to the party of the second part his entire output and production of crude oil now produced and to be produced, but not to exceed 300 barrels per day, on the following described premises: [Which is described.]

"(2) Delivery of oil under this contract to begin on the 7th day of February, 1924, and to continue as provided in paragraph No. 4 hereof. * * *

"(4) The party of the second part agrees to pay the Texas Company posted price, plus a premium of 25 cents per barrel of 42 United States gallons each.

"This contract may be canceled on 30 days' notice by either party."

Appellant, by exception, urged a misjoinder of causes of action in appellee's petition, pleaded general denial, answered, admitting the contract, and alleged that about March 12, 1924, it, by letter, requested appellee to mod-

---

⚖══For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

ify said written contract, reducing the premium to be paid for the oil of 25 cents per barrel, as provided in the contract, to a premium of 10 cents per barrel for the period from March 15th to April 15th; that this request was agreed to and accepted by appellee on the 15th of March, 1924, and by reason thereof the original contract was modified, and appellee agreed to sell, and appellant agreed to buy, all the oil produced from the premises for said period at the price stipulated in the original contract, less the 15 cents per barrel, and that said modification agreement was for a valuable consideration, and that, relying on said agreement, appellant purchased the oil called for in the original contract from March 15, 1924, and paid therefor at the price stipulated in the original agreement, less the sum of 15 cents per barrel, and that appellee is estopped to claim said additional 15 cents on the oil received from March 15 to April 15, 1924.

Appellant admits that from April 15 to April 29, 1924, it purchased and received 1,830.25 barrels of oil from appellee, and did not pay therefor the additional 15 cents, but asserts that it tendered, on demand, said 15 cents per barrel for the oil received during said period, and tendered in its pleadings the sum of $274.54 for the oil received after April 15th; that on March 29th, under the provisions of the contract, appellant gave appellee notice that the contract was terminated, effective 30 days from March 29, 1924, and that it was the duty of appellee to notify the Texas Pipe Line Company, his agent, to discontinue the running of his oil to appellant in accordance with said notice; that, if any oil was run to it after April 29th, it was without its knowledge or consent, without any fault upon its part; that said oil was not delivered to appellant on that date, but was run into the line of the Texas Pipe Line Company, and it has no knowledge, and no way of ascertaining, the time the oil was delivered into its storage tanks; that appellee made no demand for payment for such oil until August 16, 1924; that appellant immediately tendered appellee a transfer of the proper number of barrels of the same kind and grade, or to pay appellee the sum of $1.25 per barrel, the posted price on that date, all of which appellee refused, and appellant tenders in its pleading the sum of $1.25 per barrel for the oil credited to it by the Pipe Line Company on April 30, 1924.

By supplemental petition, appellee excepted generally to appellant's answer, pleaded general denial, failure of consideration for the modification of the original contract, and alleged that appellant received 178.80 barrels of oil from appellee's lease on April 30, 1924, and failed, and still fails and refuses, to pay therefor any sum; that appellant knew, or could have known, of the transfer of said oil to it by the Texas Pipe Line Company within 15 days thereafter, and that appellant had actual notice of such transfer by the report of said Texas Company on or about May 12th thereafter; and that on said date appellant appropriated said oil, and became liable for the value thereof at the market price on said date, which was $2.25 per barrel.

The case was tried before the court without the intervention of a jury, and judgment rendered for appellee for the sum of $1,097.03, with interest at the rate of 6 per cent. per annum from the date thereof.

The material findings of fact filed by the court are to the effect that appellant and appellee entered into the contract of February 7, 1924, which could be terminated by either party after giving 30 days' notice in writing to the other party; that appellee delivered, and appellant accepted, through the Texas Pipe Line Company, all the oil produced from the premises mentioned in the contract from February 7th to April 29th, inclusive; that for the period ending March 15th appellant paid the posted price of $2.25 per barrel, plus 25 cents per barrel premium, according to the terms of the written contract; that from March 16th to April 29th, inclusive, appellee delivered, and appellant accepted, 5,525.3 barrels of oil, for which appellant paid the posted price of $2.25 per barrel, plus a premium of only 10 cents per barrel on each barrel, or 15 cents less per barrel than was provided for in the written contract; that on March 14, 1924, while the written contract was still in full force, appellant requested that appellee, because the contract was unduly burdensome, voluntarily agree to reduce the premium from 25 cents per barrel to 10 cents per barrel for the period of time from March 16th to April 15th, inclusive; that on March 18th appellee consented to such reduction for the period named, conditioned on appellant's agreement to thereafter continue such contract at said 25 cents premium; that on March 29th thereafter appellant notified appellee in writing that its contract with him would terminate on April 29, 1924, and both parties treated the contract at an end from and after said last named date; that prior to April 29th appellee notified the Texas Pipe Line Company of the termination of his contract, and directed that no more of his oil be run to appellant; that on April 30th, without the knowledge or fault of either appellee or appellant, the Texas Pipe Line Company received into its line, and by inadvertence placed to the credit of appellant, 178.80 barrels of appellee's oil; that neither appellee nor appellant discovered the disposition made of said 178.80 barrels of oil until about August 16, 1924, when appellee demanded pay therefor at the rate of $2.25 per barrel, the posted market price from April 30th to June 15th, inclusive, which appellant refused, but tendered appellee the same number of barrels of oil of the same grade and quality, or of-

fered to pay therefor the sum of $1.25 per barrel, the posted price on August 16, 1924.

The court concluded, as a matter of law, that there was no consideration for the modification agreement by which an attempt was made to modify the written contract, and that appellant was justly indebted to appellee in the sum of $828.79, which was 15 cents per barrel for the oil sold and accepted by appellant from March 16th to April 29th; that, in the absence of any knowledge or fault on its part, appellant would be liable only for the value of the 178.80 barrels of oil credited to it by the Texas Pipe Line Company on April 30, at the market value thereof on August 16, 1924, which was $1.50 per barrel; that the oil covered by the written contract was intended to be, and was, delivered from day to day, as the same was produced and run into the pipe lines of the Texas Company; that from March 18th until April 29th, inclusive, the written contract was in full force and effect, and the oil delivered during such period was to be governed by such written contract; that none of the oil produced from appellee's lease from March 18th to April 15th had been delivered on March 18, 1924; that appellant, on or about July 25, 1924, offered to pay the 15 cents per barrel, the remainder of the premium per barrel, on the oil run from April 16th to April 29th, inclusive, but that the appellee contended for 15 cents for all oil run from and after March 15th to and including April 29th.

Appellants, by all of their three assignments, which we will consider together, present as error the action of the trial court in holding, under the facts, that there was no consideration for the modified agreement, and therefore the written contract was in full force from March 16th to April 29th, inclusive, and appellant was bound to pay appellee according to the stipulations therein, because the written contract was executory, and could be modified by the parties by agreement, without any new or additional consideration. On March 12, 1924, the appellant wrote appellee, explaining why its contract with appellee was at that time extra burdensome, advising that it thought in 30 and possibly 45 days the situation would be relieved by the increased consumption of gasoline, and stated:

"We are writing this letter to request the producers from whom we are obtaining crude oil to voluntarily consent to a reduction in the premium which we are paying them from 25 cents to 10 cents per barrel for the period, March 15th to April 15th."

Appellee did not answer this letter, and, in response to a question propounded to him by appellant's counsel relative to a conversation between him and Mr. Mattingly, the agent of appellant, with whom the negotiations for the modified agreement were had, testified:

"Well, that wasn't exactly the conversation, because I had decided I would not accept it; but he agreed in his statement that, if I would grant him that concession for 30 days, they would continue to pay me the 25 cents bonus after April 15th, so I said: 'Well, if you are going to do that, I don't want to be hard on you, and at the same time I am not going to release that contract; but, if you will do that, I will agree to it for the 30-day period.'"

Mr. Mattingly, the representative of appellant, testified that on or about March 18th he met appellee and told him he was the last man on his list, and asked what he was going to do about the letter; that he told him most everybody had agreed to take the reduction, and appellee said:

"Well, in that case I will agree to take it just for 30 days."

For this Mattingly promised that:

"At the end of 30 days we would revert back to the 25 cents premium, according to the contract."

Under the original contract, appellant was to take all of appellee's oil, if it did not exceed 300 barrels per day, and pay the posted price, which is admitted to have been $2.25 per barrel. plus a premium of 25 cents per barrel. The contract could have been terminated at any time by either party by giving 30 days' written notice. No notice had been given on March 15th; hence the contract could not have been terminated by appellant prior to April 15th, and would therefore have continued in full force for such time, and required payment according to its terms, which would have been $2.50 per barrel, under the undisputed record, for said period, unless changed by the modification agreement.

It will be noted that there is no contention that the written contract was released, or rescinded, or abandoned, or that either party so intended. Appellee consented to the reduction of 15 cents per barrel for the oil delivered from March 16th to April 15th, on the condition that appellant, at the expiration of that time, would return to the written contract and pay the 25 cents premium, according to its terms.

[1, 2] Appellant contends that, because no time was mentioned for the written contract to continue after April 15th, it was authorized at any time to give the 30 days' notice, terminate the contract, and still hold appellee to the reduced price for the 30 days. If this contention is sound, appellant could have given the notice immediately after the conditional agreement to reduce the price March 18th, and ended the contract on April 18th; therefore there was no detriment to appellant, and no benefit to appellee, and certainly no additional consideration. Was an additional consideration necessary? Appellant had contracted to do a particular thing—take all of appellee's oil, if not in excess of 300 barrels

per day, and pay a certain price therefor, and in our opinion this was not such an unperformed contract as could be modified without any additional consideration.

"When a party has contracted to do a particular thing or to perform a particular service for a sum stated or to be ascertained in a manner fixed, any subsequent agreement by which the rate of compensation is to be enhanced or diminished is without consideration, unless the party who is to pay the additional or receive the reduced consideration is in some way compensated, other than as provided in the original contract, for the burden imposed or the detriment suffered by the modification." American National Ins. Co. v. Teague (Tex. Com. App.) 237 S. W. 248.

The rule announced was not applied in the case, supra, by the Commission of Appeals, but the record discloses that the contract there under consideration provided that either party was at liberty to terminate it without notice to the other. In the case of Jones et al. v. Risley, 91 Tex. 1, 32 S. W. 1027, it is held by the Supreme Court that a subsequent promise to pay extra compensation, for the purpose of inducing a party to do what he is already bound to do under a written contract, is without consideration to support such subsequent promise. See, also, Witherspoon v. Green (Tex. Civ. App.) 274 S. W. 170; Boerger v. Vandegrift (Tex. Civ. App.) 188 S. W. 948.

[3, 4] It is our opinion, however, that there was an additional consideration agreed upon between the parties for the reduction of the price. Appellee promised to accept the reduction for a period of 30 days, in consideration of appellant's promise at the expiration of that period to return to the original contract, and take and pay for the oil according to its provisions. On March 29th appellant gave notice that it was terminating the written contract, effective April 29th. The time for the reduced price expired April 15th, but appellant failed to return to the written contract and pay for the oil thereafter accepted at the price stipulated therein; hence it failed to perform its promise, which was the consideration for appellee's promise to allow the reduction. Appellant's belated offer on July 25th to pay the additional 15 cents per barrel for the oil received from April 15th to April 29th was not a compliance with its agreement that it would on April 15th revert to the written contract and pay the premium according to its provisions.

Appellee evidently understood, and from the letter written him, and what passed in the negotiations between him and Mr. Mattingly, appellant's agent, he was warranted in understanding, that at the expiration of the 30-day period he would be paid for his oil at the price stipulated in the written contract, and no notice would be served upon him to terminate such contract before the expiration of said 30 days. Appellant, if it acted in good faith, did not so understand appellee's proposition, and the minds of the parties never met on the terms and conditions of any modified agreement; hence the original contract remained in force until terminated by the written notice of appellant.

[5] Neither was there an offer and acceptance of the terms of the modified agreement that would constitute a valid contract. Appellee's offer to reduce the price for 30 days was conditioned that at the expiration of that time appellant should again begin taking oil and pay therefor at the price fixed in the written contract, and, while appellant accepted the oil at the reduced price, it failed to accept the condition and return to the price stipulated for in the written contract at the expiration of said 30 days, and its offer to accept such condition after the controversy on July 24th, after it had received oil and paid therefor at the reduced price, came too late as an acceptance of appellee's proposition.

[6] Appellee, by cross-assignment, assails as error the action of the trial court in refusing him a recovery at $2.25 per barrel for the 178.80 barrels of oil credited to appellant on April 30, 1924, by the Texas Pipe Line Company. The market value on April 30th, and for some time thereafter, for said oil, was $2.25 per barrel; but at the time of the discovery on August 16th, by appellee and appellant, that the Texas Pipe Line Company had on April 30th credited said oil to appellant, the market price was $1.50 per barrel, and appellee was allowed to recover at that price. The court, on ample testimony, found that the Texas Pipe Line Company on April 30th, after it had been notified by appellee not to do so, credited appellant with this 178.80 barrels of oil; that appellant had no knowledge thereof, and was guilty of no wrong in connection therewith; and that neither it nor appellee discovered the disposition made of this oil by the Texas Pipe Line Company until about August 16, 1924, at which time appellee demanded pay at $2.25 per barrel, and appellant tendered to appellee the same number of barrels of oil of the same grade and quality, which appellee refused.

This record reveals that there was no intention upon the part of appellant to convert this oil to its own use and benefit; that it was guilty of no wrong in coming into possession thereof, or in failing to discover that the oil had been accredited to it, and when the discovery was made promptly tendered restitution to the appellee. Under these circumstances, the court did not commit error, and the cross-assignment is overruled. 26 R. C. L. p. 1111.

The judgment of the trial court is in all things affirmed.